## LA DUKE v. HUDSON RIVER TELEPHONE CO.

(Supreme Court, Appellate Division, Third Department. December 30, 1909.)

1. MASTER AND SERVANT (§ 124*)—SAFE PLACE TO WORK—OBLIGATION OF MASTER.

    A telephone company, employing a lineman to remove poles because a new system rendered them unnecessary, must inspect the poles below the surface of the ground, in furtherance of its duty to furnish a safe place to work, unless the duty of inspection is on the lineman.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 235, 237, 238; Dec. Dig. § 124.*]

2. MASTER AND SERVANT (§ 235*)—INJURY TO SERVANT—CONTRIBUTORY NEGLIGENCE.

    A lineman, employed by a telephone company to remove poles because a new system rendered them unnecessary, could assume before climbing a pole that the company had inspected the poles beneath the surface of the ground, unless the duty of inspection devolved on him either by his contract or by the company's method of conducting its business to his knowledge.

    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 710–722; Dec. Dig. § 235.*]

3. MASTER AND SERVANT (§ 286*)—INJURY TO SERVANT—NEGLIGENCE—QUESTION FOR JURY.

    Where, in an action against a telephone company for injuries to a lineman while working on a defective pole, there was no evidence that the lineman was instructed to inspect the poles beneath the surface of the ground, and he showed that the company made systematic inspections of its poles by men employed for that purpose, and that its linemen did not make such inspection, and the company proved that the linemen made their own inspection, and that the lineman had been employed for six months, the question whether the company or the lineman was required

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to inspect the poles was for the jury, authorizing a recovery only on a finding that it was the duty of the company to make the inspection.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1029; Dec. Dig. § 286.*]

Appeal from Trial Term, Essex County.

Action by George M. La Duke against the Hudson River Telephone Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

See, also, 124 App. Div. 106, 108 N. Y. Supp. 189.

This is an action to recover damages for the alleged negligence of defendant, a telephone company, resulting in personal injuries to plaintiff. He was in the service of the defendant as a lineman, and was engaged in removing poles of one of the defendant's telephone lines, not because the poles were old and worn out, but because defendant had inaugurated a new system, and the poles were therefore obsolete and unnecessary. He climbed one of the poles, and cut the wires which extended from the top, when the pole fell with him, causing his injuries. The direct and immediate cause of the accident was the rotten condition of the pole beneath the surface of the ground, which caused it to break at that point when deprived of the support of the extending wires at the top. Engaged with plaintiff in the performance of this work was one Higgs, to whose directions plaintiff was subject, but who was not present at the time of the accident. On a former appeal a judgment herein in favor of plaintiff was reversed as against the weight of evidence. 124 App. Div. 106, 108 N. Y. Supp. 189.

Argued before SMITH, P. J., and CHESTER, KELLOGG, SEWELL, and COCHRANE, JJ.

Weeds, Conway & Cotter (Thomas B. Cotter, of counsel), for appellant.

Fred M. La Duke, for respondent.

COCHRANE, J. In fulfillment of its duty to furnish the plaintiff a reasonably safe place in which to work, it was incumbent on defendant to inspect its poles below the surface of the ground, unless it had devolved such duty of inspection upon the plaintiff himself. McGuire v. Bell Telephone Company, 167 N. Y. 208, 60 N. E. 433, 52 L. R. A. 437; Riker v. New York, Ontario & Western Railway Company, 64 App. Div. 357, 72 N. Y. Supp. 168. Whether or not this duty of inspection had been devolved on plaintiff was an important question, towards which both parties directed their evidence. Unless the devolution of such duty on the plaintiff had taken place, either by his contract of employment with the defendant or by the defendant's method of conducting its business to his knowledge, he clearly was justified under the above-cited authorities in the assumption that the pole in question had been inspected beneath the surface of the ground by the defendant before he entered upon the task of its removal.

The evidence shows that there is a well-understood method of making such inspection by removing the dirt from the base of the pole and injecting into it some sharp instrument, which will disclose its rotten or decayed condition, if such exists. There is no evidence that plaintiff was instructed to make his own inspection. He introduced evidence to the effect that the defendant made systematic and periodi-

cal inspections of its poles by men detailed for that purpose, and that its linemen in working on poles did not make such inspection prior to ascending them. The defendant, on the other hand, produced evidence tending to show that the linemen made their own inspection. The district foreman of the defendant, who had been in its employ for 13 years, testified:

"It is a practice and custom for each man to test the pole for himself. That has been true while I worked for the company."

Another witness, who had worked for the defendant a number of years as lineman, both as foreman and member of a gang, and who had tested poles below the surface of the ground, testified that he never saw any man making tests who was not working on a line. Still another witness, who had served the defendant for 20 years as lineman, foreman, and district manager, and who was familiar with tests of telephone poles, testified that during all the time of his employment it had not been the custom or practice of defendant to have inspections made, except by the men working on the line, and that the defendant had never made inspection of its poles below the surface of the ground from time to time. If such was the custom of the defendant, the plaintiff, who had on a previous occasion been in its employ as a lineman for six months, may well have known of such custom, and understood therefrom that it was his duty to make his own inspection.

Such being the condition of the evidence relative to the important question as to which party had the duty of inspection, the learned trial justice, after charging the jury that such duty primarily rested on the defendant, but that the latter claimed that such duty had devolved on the linemen, continued as follows:

"Now, much of the evidence in this case has been bearing on that subject; and I say to you that, in order to find that such was the fact, you must find that it was so understood between the defendant and the plaintiff. If the plaintiff understood that the duty of inspection devolved upon him as part of his duty in connection with his labors, that that was their agreement and understanding, then the plaintiff has no standing in court, because he cannot complain that defendant had neglected him in regard to inspection. Now, I am going to say to you that I find no evidence that would justify you in finding that fact. It may be that Higgs was a lineman. It may be that other employés have held that relation to defendant. But I am going to charge you that there is no evidence that will justify you in finding that fact; that in hiring the plaintiff and setting him to work as an employé of the defendant, there are no facts that would justify you in finding that the duty of inspection devolved upon him."

And again, in response to one of defendant's requests to charge, the court said:

"I have charged you that there is no fact that would justify you in finding that the duty of inspection devolved upon plaintiff, so as to relieve defendant of that duty."

To this charge an exception was duly taken. It is clear from the testimony, reference to which has been made, that a very substantial question of fact existed as to this important question, and the trial justice, by taking that question from the jury and instructing them unequivocally that the duty of inspection had not devolved upon plaintiff, committed a highly prejudicial error. Whatever may have been

the condition of the record on the former appeal, the present record leaves no doubt that the jury, rather than the court, should have determined on which party the duty of inspection rested; and it makes no difference that the telephone line was not in active use, although the trial justice seemed to draw such a distinction. The charge, as made, that the duty of inspection rested primarily on the defendant, and that such duty had not been devolved by it upon the plaintiff, was practically tantamount to an instruction, as matter of law, that the defendant was negligent, because there was no claim by the latter that any inspection had in fact been made.

The judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur; KELLOGG, J., in result.